UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CYNTHIA L. MEYERS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

Case No. 1:15-CV-0984

HON. ROBERT J. JONKER

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Cynthia Meyers seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

## **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty-three years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.48, 75.) She completed high school, and was previously employed as a switchboard operator, resident supervisor, and reception clerk. (PageID.77, 100–101.) Plaintiff applied for benefits on July 12, 2012, alleging that she had been disabled since May 31, 2012, due to thrombotic thrombocytopenic purpura, depression, headaches, migraines, and cholecystitis. (PageID.106, 186–187.) Plaintiff's application was denied on August 30, 2012, after which time she requested a hearing before an ALJ. (PageID.116–121.) On October 15, 2013, Plaintiff appeared with her representative before ALJ Carol Guyton for an administrative hearing with testimony being

offered by Plaintiff and a vocational expert (VE). (PageID.68–104.) In a written decision dated January 10, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.48–67.) On March 30, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.39–44.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four.

---

[1] 1.   An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.   An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.   If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.   If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.   If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

*Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Guyton determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.53.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) depression; (2) anxiety; and (3) undiagnosed myalgias. (PageID.53.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.54–55.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b), except she cannot climb ladders, ropes, or scaffolds; she cannot balance, stoop, kneel, crouch, crawl, or climb stairs/ramps more than occasionally; she cannot work at unprotected heights or around dangerous machinery; she cannot perform more than simple, routine tasks involving no more than simple, short instructions, simple work-related decisions, and few workplace changes; and she cannot maintain contact with the general public or more than occasional contact with co-workers.

(PageID.55.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.60.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE identified the following positions as those Plaintiff could perform: garment sorter (1,020 regional jobs[2] and 41,000 national jobs),

---

[2]At the hearing, the VE defined regional jobs as those jobs existing within the lower peninsula of the state of Michigan. (PageID.101.)

folder (1,100 regional jobs and 44,000 national jobs), and sorter of agricultural produce (1,000 regional jobs and 40,000 national jobs). (PageID.101–102.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.62.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from her alleged disability onset date through the date of decision. (PageID.62.)

## DISCUSSION

### 1.     The ALJ Properly Evaluated Plaintiff's Credibility.

At the hearing, Plaintiff testified that she was impaired to an extent far greater than that recognized by the ALJ. For example, Plaintiff stated that she had pain in her lower joints–placing the pain at a ten on a scale of one to ten. (PageID.83.) She could only sit down for five minutes without getting up, and walk or stand for ten minutes before needing to rest. (PageID.83–84.) She further stated she had a panic attack every day. (PageID.84.) She testified that about once a week she becomes fearful when going outside, and at all times cannot go beyond her driveway by herself. (PageID.95–96.) The ALJ found her testimony to not be credible. (PageID.56.) Plaintiff argues the ALJ erred in doing so.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R.

§ 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth

Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ discussed Plaintiff's testimony regarding her nonexertional complaints as follows:

> Although the evidence of record also indicates that the claimant has been assessed to have depressive and anxiety/panic disorders, the overall record is not reflective of emotional symptoms experienced by the claimant to a debilitating degree, as would be suggested by a history of repeated hospitalizations for mental health treatment. Records from her various treatment providers, as well as the psychological report from Dr. Lozer, show that the claimant has consistently presented for exams as cooperative and in contact with reality. There are no annotations that she exhibited evidence of hostility, suspiciousness, tangentiality, or unusual behavior or mannerisms. Again, no significant deficits of cognition, memory, concentration or judgment were evident upon the consultative psychological evaluation of the claimant conducted by Dr. Lozer in November 2013, where she offered clear, rational responses and displayed relevant, logical, and organized though processes with no evidence of a though disorder (Exhibit 22F). There is no evidence showing that the claimant has reported experiencing significant adverse-side effects from her current medication regimen, and she has consistently reported improvement of her mood and anxiety with their use. Furthermore, per her own admissions, she has clearly maintained an adequate amount of daily activities since May 31, 2012, the date she alleges she became disabled and unable to work.

(PageID.59.) The ALJ's reasons for discounting Plaintiff's allegations are supported by substantial evidence. In addition to finding her testimony inconsistent with her daily activities–a determination Plaintiff has not challenged–the ALJ found Plaintiff's testimony was inconsistent with the record, which showed a lack of repeated hospitalizations and normal mental status exams. In this the ALJ gave an accurate recitation of the evidence of record, and accordingly substantial evidence supports the ALJ's decision.

Plaintiff argues, however, that in discrediting her statements, the ALJ improperly played doctor, improperly relied on normal mental status findings, and failed to properly consider her use of medication, including the side effects she experienced. (PageID.957–961.)

The Court disagrees with Plaintiff's characterization of the ALJ's credibility discussion. The ALJ did not improperly state that a claimant would require a certain amount of hospitalizations in order to be disabled. Rather it was entirely proper for the ALJ to note that Plaintiff had not been repeatedly hospitalized for mental health treatment. *See* 20 C.F.R. 404.1529(c) (noting that in evaluating the intensity and persistence of a claimant's symptoms, the Commissioner will consider several relevant factors, including "treatment, other than medication, you receive or have received for relief of your pain or other symptoms"). In noting the lack of repeated hospitalizations, the ALJ did not base her factual finding regarding Plaintiff's credibility on her own lay medical opinion. *See Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 562 (6th Cir. 2014) ("As the ALJ properly reviewed and weighed the reports to make a legal determination that is supported by substantial evidence, the assertion that the ALJ was 'playing doctor' is unsupported."); *cf. Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009).

The Court also disagrees with Plaintiff's statement that the ALJ believed evidence of hostility, suspiciousness, tangentiality, or unusual behavior of mannerisms was required in order to be found disabled. While the ALJ perhaps could have been more clear, what is evident from the preceding sentence of the discussion is that the ALJ found Plaintiff's testimony to be inconsistent with mental status exams finding Plaintiff to be cooperative and in contact with reality. This observation is supported by substantial evidence. For example, at a May 2, 2013, group therapy session Plaintiff was not on any medication, but was calm, attentive, logical, and cooperative.

(PageID.474–475.)  Later, Dr. James Lozer, a consultative examiner, found Plaintiff to be in contact with reality and had a fair insight.  (PageID.885–886.)  The ALJ reasonably found these normal mental status examinations to be inconsistent with the severity of Plaintiff's allegations.  Plaintiff relatedly argues, however, the ALJ erred by "focus[ing] on objective signs that are lacking from a single examination" even though the "overall record supports" her complaints.  (PageID.960.)  The problem with this argument is that it is the ALJ, not the Court, who is charged with weighing the evidence.  It is the ALJ's role to weigh the evidence and resolve inconsistencies.  Her decision must be upheld so long as it is supported by substantial evidence.  *See Richardson*, 402 U.S. at 399.  Though the ALJ may have only specifically cited to one report, her discussion makes clear she was also relying on other reports that demonstrate normal findings.  As noted above, this determination is supported by substantial evidence.

Next, Plaintiff argues the ALJ erred failing to find that Plaintiff reported side effects from her medications.  The ALJ noted Plaintiff's testimony that her medications made her drowsy and dizzy, but noted that Plaintiff did not state which medication caused those effects.  (PageID.56.)  The ALJ concluded that there was "no evidence showing that the claimant has reported experiencing significant adverse-side effects from her current medication regimen."  (PageID.59, 960.)  Plaintiff argues otherwise.  Allegations of a medication's side effects must be supported by objective medical evidence.  *See Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665–66 (6th Cir. 2004) (where plaintiff testified that she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contain no such reported side effects to her physicians); *Farhat v. Sec'y of Health & Human Servs.*, No. 91–1925, 1992 WL 174540 at * 3 (6th Cir. July 24, 1992) ("[claimant's] allegations of the medication's

side-effects must be supported by objective medical evidence"). Plaintiff argues that Ativan makes her drowsy, and that Klonopin was not effective. (PageID.960.) As for Klonopin, lack of efficacy does not appear to constitute a side effect that the ALJ needed to consider. As regards Ativan, there was one report where her psychologist recorded her statement that Ativan put her to sleep. (PageID.444.) But as Plaintiff herself admits, she is no longer taking that medication, and that ALJ specifically noted that Plaintiff reported no side effects from her *current* regime. Accordingly, the Court finds that Plaintiff has failed to provide objective medical evidence demonstrating that she experienced side effects from her current medication regime, and for that reason her argument must be rejected.

Similarly, Plaintiff errs by citing to medications she no longer takes in arguing the ALJ mistakenly found she consistently reported improvement on her current medications. (PageID.960–961.) True, she reported to Dr. James Lozer (a consultative examiner) after the hearing that her current medications were not helping (PageID.883) but her statements to her other physicians are otherwise. As Plaintiff herself puts it, she "was trialed on multiple antidepressants *until she found relief* on the second trial of Cymbalta." (PageID.961) (emphasis added.) When she was discharged from Forest View Hospital on Cymbalta and Seroquel her mood had improved. (PageID.504.) She was given a good prognosis so long as she continued her medication and kept her appointments. (PageID.505.) The ALJ did not err in finding that Plaintiff regularly demonstrated improvement on her current medication.

Here, the ALJ's factual finding regarding Plaintiff's credibility, in total, is supported by substantial evidence and withstands scrutiny under the deferential substantial evidence standard of review. Plaintiff's claim of error is denied.[3]

### 2. The ALJ Properly Evaluated the Medical Opinions in the Record.

Plaintiff next argues the ALJ erred in failing to assign proper weight to the opinions of Dr. Lozer and Ms. Angela Smith, her sister. The Court disagrees.

Plaintiff first argues that the ALJ erred in assigning only little weight to a portion of Dr. James Lozer's opinion. Specifically, Plaintiff argues that the ALJ should have credited Dr. Lozer's opinion that she "would not be able to engage in full time competitive employment" and his opinion that Plaintiff had a "marked limitation in her ability to perform and sustain work related functions" (PageID.888.) Plaintiff argues the ALJ improperly considered GAF scores and ignored favorable evidence in her decision. (PageID.961–962.)

As a consultative examiner, Dr. Lozer's opinion was not entitled to any particular weight. *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x at 744. While Plaintiff correctly notes the limited usefulness of GAF scores, the problem for Plaintiff is that the ALJ correctly noted that statements, as those made here, opining that a claimant is disabled or unable to work concern an issue reserved to the Commissioner and are entitled to no special significance. (PageID.60); 20

---

[3] Later in her brief, Plaintiff contends that the ALJ erred by refusing to adopt the hypothetical posed to the VE which incorporated her subjective complaints. (P:ageID.968.) However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'") (quoting *Casey*, 987 F.2d at 1235). The VE does not determine a claimant's medical restrictions or how they impact the claimant's RFC—that is the ALJ's job. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1987). The ALJ, having found that Plaintiff's subjective complaints were not fully credible, was not bound by the VE's responses to hypothetical questions incorporating a contrary assumption.

C.F.R. § 404.1527(d).  Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 452 (6th Cir.1986).  The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir.1984). The ALJ also noted the opinion was inconsistent with Dr. Lozer's statement that Plaintiff would have only mild limitations in understanding, remembering, and carrying out simple instructions and moderate limitations on complex instructions. (PageID.60, 889.) Such is more than substantial evidence to give only little weight to Dr. Lozer's conclusory opinion.

Plaintiff further faults the ALJ for failing to say a few words about Dr. Lozer's specific statement that Plaintiff would have a marked limitation in the ability to perform and sustain work related functions.  (PageID.963, 993–995.)  The Commissioner responds that there is "no practical distinction" between this statement and Dr. Lozer's statement that Plaintiff is unable to work. (PageID.985.)  The Court agrees.  Plaintiff attempts to distinguish the statement from one finding a Plaintiff disabled or unable to work, but does little more than assert that while the latter statement concerns an issue reserved to the Commissioner, the former does not. (PageID.994.)  As explained above, the ALJ summarized Dr Lozer's report and explained why he gave only partial weight to the opinion.   The ALJ was not required to discuss in detail every part.  *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.").  The Court finds no error here.

Plaintiff finally argues the ALJ erred in failing to properly consider the function report provided by her sister, Ms. Angela Smith. (PageID.963–965.)  Ms. Smith qualifies as an "other source," and accordingly her statement may be used by the Commissioner to show the severity of

12

Plaintiff's impairments and how it affects Plaintiff ability to work. 20 C.F.R. § 404.1513(d). Because she was an "other source," the ALJ was required only to consider Ms. Smith's opinion. *See* SSR 06–03p, 2006 WL 2329939, at *2, 6 (S.S.A. Aug. 9, 2006) (citing 20 C.F.R. §§ 404.1513, 416.913); *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007)). This is not a demanding standard. It was easily met here. In addition to noting Ms. Smith's relationship with Plaintiff, the ALJ found statements from acceptable sources, and Plaintiff's treatment, daily activities, and demeanor at the hearing, all undercut Ms. Smith's opinion. Such was more than sufficient to satisfy the ALJ's obligation to consider the other source opinion, and for reasons stated above, is supported by substantial evidence.

For all the above reasons, Plaintiff's claim of error is rejected.

### 3. The ALJ's RFC Determination is Supported by Substantial Evidence.

Plaintiff contends that the ALJ's RFC assessment failed to provide the full limitations occasioned by Plaintiff's fatigue and diffuse pain. (PageID.965–66.) The gist of Plaintiff's claim is that these impairments render her incapable of performing the demands of light work.

RFC is a medical assessment of what an individual can do in a work setting despite functional limitations and environmental restrictions imposed by all of the individual's medically determinable impairments. 20 C.F.R. § 404.1545. It is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(C). Here, the ALJ determined that Plaintiff suffered from depression, anxiety, and undiagnosed myalgias. (PageID.53, 55.) The ALJ also found that Plaintiff retained the RFC for a limited range of light work, and that she could carry out only simple, short instructions. (PageID.55–60.) The ALJ carefully considered the evidence related to

Plaintiff's mental impairments, complaints of fatigue, and lower extremity pain. (PageID.55–60.) Plaintiff has not shown that the restrictions the ALJ included in her fact RFC determination, such as limiting Plaintiff to light work with only occasional postural restrictions and simple, routine tasks with a further limitation regarding contact with the public and co-worker failed to adequately take into account Plaintiff's functional limitations stemming from the complained of impairments. The records Plaintiff depends upon merely document her subjective reports of fatigue and pain, complaints the ALJ has already found to not be credible. The Court finds, therefore, that the ALJ properly considered all of Plaintiff's impairments in formulating the RFC.

Plaintiff further argues that because the ALJ's RFC assessment does not mirror the opinion or findings of any medical expert, the ALJ was left to "play doctor" when creating the RFC. (PageID.966–968.) Plaintiff relies on language in *Vaughn v. Comm'r of Soc. Sec.*, No. 14-CV-12496, 2015 WL 5216165 (E.D. Mich. Sept. 4, 2015), and *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008)) to support her assertion. In *Vaughn*, the court held that "courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned against relying on their own expertise in drawing RFC conclusions from raw medical data." *Id.* at *9. That case cited *Deskin* for support. There, in relevant part, the court stated "[a]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Id.* at 912. *Deskin*, however, has been soundly criticized as "not representative of the law established by the legislature, and interpreted by the Sixth Circuit Court of Appeals." *Henderson v. Comm'r of Soc. Sec.*, No. 1:08 CV 2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010). Indeed, as Defendant correctly notes, the Sixth Circuit has rejected Plaintiff's argument. *See, e.g.*, *Rudd v. Comm'r of Soc.*

*Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("the Commissioner has final responsibility for determining an individual's RFC . . . and to require the ALJ to base her RFC finding on a physician's opinion 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled'") (quoting SSR 96–5p); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ not a physician ultimately determines a claimant's RFC.")

The Court concludes the ALJ acted squarely within her authority in determining Plaintiff's RFC. It is the ALJ who has the ultimate responsibility for assessing a Plaintiff's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1545(a); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [their] residual functional capacity.") As the ALJ indicated, Dr. Lozer's opinion played a part in determining Plaintiff's RFC. (PageID.60.) The ALJ also considered Plaintiff's treatment notes, statements to her physicians, and activities of daily living. (PageID.60.) The Court finds no error here.

## **CONCLUSION**

For the reasons discussed, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.


Dated:     September 19, 2016             /s/ Robert J. Jonker
                                          ROBERT J. JONKER
                                          CHIEF UNITED STATES DISTRICT JUDGE